FILED
2026 Sep-01 PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SOUTHPOINT BANK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. 2:25-cv-269-ACA** |
| | } | |
| **FRANK THOMAS SHUMATE, JR,** | } | |
| | } | |
| **Defendant.** | } | |

# MEMORANDUM OPINION AND ORDER

In February 2025, Plaintiff SouthPoint Bank filed this breach of contract action against Defendant Frank Thomas Shumate, Jr. The court entered default judgment against Mr. Shumate after he failed to appear and defend this action. Mr. Shumate now moves to set aside the default judgment entered against him. (Doc. 22). Because Mr. Shumate has not satisfied his burden, the court **DENIES** his motion.

## I. BACKGROUND

In February 2025, SouthPoint filed this action against Mr. Shumate, alleging that Mr. Shumate defaulted on a series of loans. (Doc. 1). One week later, SouthPoint filed a proof of service. (Doc. 4). The proof of service contends that a process server personally served Mr. Shumate at 111 West Olmos Drive in San Antonio, Texas on February 26, 2025. (*Id.*). The process server delivered the documents to a "brown-

haired white male" around "55–65 years of age," who answered "yes" when the process server identified him as Frank Thomas Shumate, Jr. (*Id.*). The man was between 6'0–6'2 feet tall and weighed between 200 and 240 pounds. (*Id.*). Mr. Shumate never appeared in this action, and the court granted SouthPoint's motion for default judgment. (Doc. 14).

In February 2026, Mr. Shumate filed a motion to set aside the default judgment, arguing the process server did not personally serve him. (Doc. 22). In support of his motion, he submitted his declaration. (Doc. 22-1). The declaration states that Mr. Shumate was in Florida on February 26, 2025 "based on [his] review of photographs and text messages." (*Id.* ¶ 5). Mr. Shumate adds that his personal residences are in Sarasota County, Florida; Karnes County, Texas; and Baldwin County, Alabama—not at the address where the alleged service occurred. (*Id.* ¶¶ 2–3). And Mr. Shumate states that he did not learn of this action until January 2026. (*Id.* ¶ 6).

Mr. Shumate submitted two other affidavits. The first affidavit is from Martin Kroesche, who runs a business located in the office building at 111 West Olmos Drive. (Doc. 22-2 ¶ 2). According to Mr. Shumate's testimony, Mr. Kroesche is also Mr. Shumate's former employee and consultant. He attests that Mr. Shumate does not have an office in the building, and although Mr. Shumate's attorney formerly had an office in the building, the attorney's office moved in 2023. (Doc. 22-2 ¶¶ 2–3).

Without an office or an attorney in the building, Mr. Kroesche attests that Mr. Shumate would have no reason to be at the building in 2025. (*Id.*). Mr. Kroesche also points out that anyone entering the building must stop at a reception desk. (*Id.* ¶ 4). Because Mr. Shumate does not have an office in the building, he attests "the receptionist would have advised the server that Mr. Shumate does not have an office here." (*Id.*).

The second affidavit is from Attorney Paul W. O'Finan. (Doc. 22-3). Mr. O'Finan is Mr. Shumate's attorney for civil matters in Texas. (*Id.* ¶ 2). He attests that he had an office in the building where the alleged service happened but moved in 2023. (*Id.*). He adds that Mr. Shumate was not in San Antonio on February 26, 2025. (*Id.* ¶ 3).

In opposition, SouthPoint submitted an affidavit from Alysha Ledezma, the process server. (Doc. 27). Ms. Ledezma stood by the information contained in the proof of service, although she does not have specific recollection of the service attempt. (*Id.* ¶¶ 4–8).

On reply, Mr. Shumate submitted a "supplemental" declaration that contradicts his first declaration. (Doc. 28-1 at 2–4). Mr. Shumate stated that after submitting his first declaration he discovered that he was in Texas, not Florida, on February 26, 2025. (*Id.* at 3 ¶ 3). According to the new declaration, Mr. Shumate was

at a veterinarian clinic that afternoon. (*Id.*). He believes the process server delivered the documents to Mr. Kroesche. (*Id.* at 3 ¶ 5).

Mr. Shumate also submitted two additional affidavits. First, Mr. O'Finan refutes arguments made by SouthPoint but does not outline any personal knowledge about Mr. Shumate's location on February 26, 2025. (Doc. 28-3). Second, Christina Luera, the secretary at building located at 111 West Olmos Drive, attests that Mr. Shumate was not at the office on February 26, 2025. (Doc. 28-2 ¶¶ 2–5).

## II. DISCUSSION

Federal Rule of Civil Procedure 60 permits a party to seek relief from a void judgment. Fed. R. Civ. P. 60(b)(4). "The burden of proof in a Rule 60(b)(4) motion rests with the defendant." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1298–99 (11th Cir. 2003). Mr. Shumate's sole argument is that the judgment in this case is void because he was not properly served under Rule 4. (Doc. 22 at 5–8).

Rule 4 allows for personal service on an individual defendant. Fed. R. Civ. P. 4(e)(2). Because the alleged personal service on Mr. Shumate is the only service attempt at issue, the parties agree that the court must set aside the default judgment if it finds that Mr. Shumate was not personally served in February 2025 in San Antonio, Texas. (*See* doc. 22 at 6–8; doc. 24 at 9–11). Mr. Shumate argues that his proffered evidence establishes that he was not served; SouthPoint argues that

Mr. Shumate has not satisfied his burden under Rule 60(b)(4). (*See* doc. 22 at 6–8; doc. 24 at 9–17). The court agrees with SouthPoint.

Mr. Shumate's evidence consists of (1) his two affidavits, (2) his former consultant's affidavit, (3) his attorney's affidavits, (4) the building secretary's affidavit, and (5) Mr. Shumate's testimony at the evidentiary hearing.

Starting with Mr. Shumate's declarations, the court does not find them credible because they directly contradict one another about Mr. Shumate's location at the time of service. Mr. Shumate's first declaration states that he "was at [his] residence in Sarasota County, Florida." (Doc. 22-1 ¶ 5). But a few weeks later, Mr. Shumate reversed course, alleging that he was actually in "the area of Yoakum and Cuero, Texas." (Doc. 28-1 at 3 ¶ 3).

Mr. Shumate argues the court should ignore this direct contradiction because his first declaration stated that he "believe[d]" he was in Florida, not that he certainly was. (Doc. 28 at 3 n.1). Mr. Shumate's argument is without merit and renders the declaration requirement of 28 U.S.C. § 1746 toothless—a party could sidestep consequences by merely saying he "believes" something, no matter if it contradicts his statements made under penalty of perjury.

Even if the court accepted Mr. Shumate's distinction, his testimony at the evidentiary hearing also contradicted his declarations. In his initial declaration, Mr. Shumate stated that he concluded that he was in Florida "[b]ased on [his] review

of photographs and text messages from February 26, 2025." (Doc. 22-1 ¶ 5). But at the evidentiary hearing, he testified that he composed his first declaration looking only at pictures and without reviewing his text messages because he did not yet know how to do so. And Mr. Shumate's second declaration said that he and Mr. Kroesche "had a phone conversation" a few days after the alleged service "in which Mr. Kroesche informed me he had legal documentation addressed to" Mr. Shumate. (Doc. 28-1 at 3 ¶ 5). At the evidentiary hearing, Mr. Shumate testified that he did not recall ever talking to Mr. Kroesche about the situation or that Mr. Kroesche had legal documents. Based on these inconsistencies, combined with the court's observations of Mr. Shumate's demeanor during the evidentiary hearing, the court does not find his testimony and affidavits credible.

Mr. Kroesche's and Mr. O'Finan's do not help. (Doc. 22-2; doc. 22-3; doc. 28-3). Both men claim that there would be few reasons for Mr. Shumate to be at the building, but neither outline any personal knowledge about Mr. Shumate's actual location on February 26, 2025. *See* Fed. R. Evid. 602; *Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1144 (11th Cir. 2019).

Accordingly, the court is left with the original proof of service and two competing affidavits—one from Ms. Ledezma and one from Ms. Luera. Ms. Ledezma completed the proof of service contemporaneously with the service. (*See* doc. 4). She identified the address of service and a physical description of the

individual accepting service.[1] (*Id.*). She also noted that the individual affirmative responded "yes" when she asked if he was Mr. Shumate. (*Id.*). Ms. Ledezma provided an affidavit reaffirming her proof of service. (Doc. 27). On the other hand, Ms. Luera attests that she is the secretary of the building at the relevant address and that Mr. Shumate was not there on February 26, 2025. (Doc. 28-2). Ms. Luera's affidavit does not mention any service attempt or that she informed the process server that Ms. Shumate was not in the building, as Mr. Kroesche's affidavit attests that she would. (*Compare* doc. 22-2 ¶ 4, *with* doc. 28-2).

Mr. Shumate attempts to discredit the proof of service and process server's affidavit because it describes Mr. Shumate as roughly fifty-five to sixty-five years old, 6'0"–6'2" feet tall, and 200–240 pounds. (Doc. 28 at 4; doc. 28-1 at 4 ¶ 8; *see* doc. 4). Mr. Shumate maintains that he is only 5'10". (Doc. 28-1 at 4 ¶ 8). Putting aside that a lay person's physical description of someone is not intended to be exact, Mr. Shumate's own driver's license—that he received eight months before the alleged service—measures him as 6'0" feet tall.

Mr. Shumate proffers that the process server likely served Mr. Kroesche. (Doc. 28 at 3–4). Despite his objections to the server's physical description as applied to himself, Mr. Shumate never provided a physical description of

[1] Based on his appearance at the evidentiary hearing, the court notes that Mr. Shumate generally matches the process server's physical description.

Mr. Kroesche. (*See generally* doc. 22; doc. 28). As outlined above, his testimony and declarations are contradictory as to whether he spoke to Mr. Kroesche and confirmed that Ms. Ledezma served Mr. Kroesche. So the court does not find this alternative theory persuasive.

Accordingly, the court concludes that Mr. Shumate has not satisfied his burden of establishing that he was not personally served on February 26, 2025. *See In re Worldwide Web Sys., Inc.*, 328 F.3d at 1298–99. The court therefore **DENIES** his motion.

## III. CONCLUSION

The court **DENIES** Mr. Shumate's motion to set aside the default judgment. (Doc. 22).

**DONE** and **ORDERED** this September 1, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE