FILED
2026 Sep-30 PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TAMMY KELLY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No. 2:25-cv-686-ACA** |
| | ] | |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

Plaintiff Tammy Kelly appeals the decision of the Commissioner of Social Security denying her claim for disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** for further administrative proceedings.

## I. PROCEDURAL HISTORY

On May 31, 2022, Ms. Kelly applied for disability and disability insurance benefits. (R. at 233–37). She alleged that her disability began on April 10, 2022. (*Id.* at 234). The Commissioner denied her application. (*Id.* at 131–35). Ms. Kelly requested reconsideration of her application, which the Commissioner again denied. (*Id.* at 136, 147–49). Ms. Kelly requested review by an Administrative Law Judge.

(R. at 150–51). The ALJ issued an unfavorable opinion on February 22, 2024 (*id.* at 7–22), which Ms. Kelly requested that the Appeals Council review (*id.* at 227–29). The Appeals Council denied her request for review (*id.* at 1–6), and Ms. Kelly timely filed a complaint seeking review of the Commissioner's decision. (Doc. 1); *see* 42 U.S.C. § 405(g); (r. at 28). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

The Commissioner's ultimate decision in a disability benefits case is reviewed for substantial evidence. *Id.* "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence," or

substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). But despite this deferential standard of review, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (quotation marks omitted).

In addition, the court "review[s] *de novo* the legal principles upon which the Commissioner's decision is based." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024). Accordingly, the Commissioner's "conclusions of law are not presumed valid," and the "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

Finally, remand is warranted only when an ALJ's error "creates fundamental unfairness or prejudice"—that is, when the argument would make a difference in a claimant's application for benefits. *Raper*, 89 F.4th at 1261, 1274 n.11; *see also Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1307 (11th Cir. 2024). The

Plaintiff bears the burden of proving that an ALJ's error was not harmless. *Raper*, 89 F.4th at 1274 n.11.

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178. Under step four, the ALJ determines if a claimant's impairments "could reasonably be expected to produce" the alleged symptoms. *See* 20 C.F.R. § 404.1529(b). Then, the ALJ examines the record and "evaluate[s] the intensity and persistence" of those symptoms to determine how they limit a claimant's "capacity for work." *See id.* § 404.1529(c)(1).

Here, the ALJ determined that Ms. Kelly had not engaged in substantial gainful activity since her alleged disability onset date of April 10, 2022. (R. at 12). The ALJ found that Ms. Kelly's chronic migraines, obesity, obstructive sleep apnea, osteoarthritis, bilateral hearing loss and tinnitus, asthma, and vertigo of central origin were severe impairments. (*Id.* at 13). But the ALJ found that her depression was not

severe. (*Id.* at 13–14). The ALJ concluded that Ms. Kelly lacked an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 15).

After considering the evidence, the ALJ determined that Ms. Kelly had:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can have occasional exposure to vibration, unprotected heights, hazardous machines, and extreme temperatures. She should avoid commercial driving and open bodies of water. She can have occasional pulmonary irritants such as fumes, odors, dusts, gasses, and poorly ventilated areas. She can work in moderate noise environments such as that term is defined in the Selected Characteristics of Occupations (SCO).

(R. at 16). The ALJ explained that Ms. Kelly's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (*Id.* at 19). But he concluded that Ms. Kelly's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 20).

The ALJ found that Ms. Kelly could perform past relevant work as a bookkeeper. (*Id.* at 22). Accordingly, the ALJ determined that Ms. Kelly had not been under a disability, as defined in the Social Security Act, from April 10, 2022 through the date of the decision on February 22, 2024. (R. at 22).

## IV. DISCUSSION

Ms. Kelly argues that a remand is appropriate for the following reasons: (1) the ALJ erred in finding the state agency psychological consultants' opinions persuasive; (2) the ALJ failed to discuss how Ms. Kelly's mental limitations affected her RFC; and (3) the ALJ failed to properly consider Ms. Kelly's migraines in evaluating whether they equaled the severity of a listed impairment and in crafting her RFC. (Doc. 15 at 8–25). The Commissioner argues that substantial evidence supports the ALJ's evaluations and determinations. (Doc. 18 at 4–14). Although the court disagrees with Ms. Kelly's argument that the ALJ improperly evaluated the consultants' opinions, the court agrees that a remand is appropriate because the ALJ did not properly account for Ms. Kelly's mental limitations and migraine symptoms in the RFC assessment, and his basis for finding that Ms. Kelly's migraines did not equal a listing is not supported by substantial evidence.

1. The State Agency Psychological Consultants' Medical Opinions

Ms. Kelly argues that the ALJ's acceptance of state agency psychological consultants George Grubbs and Angela Registers's medical opinions was erroneous as a matter of law and not supported by substantial evidence. (Doc. 15 at 8–12). In particular, Ms. Kelly contends that the ALJ inadequately evaluated the supportability and consistency of the opinions because he acknowledged that the doctors "did not support their findings with an explanation" and cited evidence contradicting their conclusions, but ultimately found their opinions persuasive. (*Id.* at 10). The

Commissioner argues that the ALJ satisfied his requirement to consider the supportability and consistency of the consultants' opinions, and that substantial evidence supports his decision to find the opinions persuasive because they are consistent with the medical records. (Doc. 18 at 4–6). The court agrees with the Commissioner on this issue.

Under the applicable regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship and the examining relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how he considered those factors. *Id.* § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he considered the other factors. *Id.*

In Dr. Grubbs's report, he details Ms. Kelly's medical and non-medical records (r. at 109–10, 111–12), and concludes that Ms. Kelly's depression was "no

more than mild" (*id.* at 112). He explains that Ms. Kelly is taking psychotropic medication prescribed by her primary care physician, is not receiving treatment from a mental health clinic, and at her most recent neurological appointment, had no indication of deficient memory, judgment, thought content, or other cognitive defects. (*Id.*). He noted that Ms. Kelly had no impairment adapting or managing herself and understanding, remembering, or applying information, but had mild impairments interacting with others and concentrating, persisting, or maintaining pace. (*Id.* at 111).

Dr. Register reached the same conclusion as Dr. Grubbs. (R. at 122). Dr. Register's report additionally included her consideration of Ms. Kelly and Ms. Kelly's cousin's indications that she could perform daily tasks and get along well with others. (*Id.* at 123). Dr. Register also noted Ms. Kelly's cousin's reports that she had no issues with memory, concentration, task completion, and stress management. (*Id.*).

The ALJ found persuasive Dr. Register and Dr. Grubbs's findings of only mild limitations due to depression. (*Id.* at 21). He explained that "[a]lthough they do not support their findings with an explanation, their findings are consistent with the medical evidence which shows a diagnosis of major depressive disorder but [no]

significant mental limits or symptoms."[1] (R. at 21). To evidence this consistency, the ALJ cited psychiatry follow-up appointment notes from April and July 2023 in which Ms. Kelly's treating physician indicated that Ms. Kelly had normal mental status. (*Id.*; *see id.* at 629–33).

The court first rejects Ms. Kelly's contention that the ALJ's evaluation of the medical consultants' opinions was erroneous as a matter of law. Although Ms. Kelly contends that the ALJ insufficiently evaluated the opinions' supportability in stating that the consultants "[did] not support their findings with an explanation," (doc. 15 at 9–10), the regulations do not require an ALJ to conclude that both supportability and consistency weigh in favor of the opinions' persuasiveness. *See* C.F.R. § 404.1520c(b)–(c). Instead, the regulations simply require that the ALJ apply the supportability and consistency factors and articulate how the ALJ considered them in the analysis. *Id.* The ALJ satisfied this requirement by stating that the consultants' opinions were not supported but were consistent with the medical records. (R. at 21). Accordingly, the ALJ's explanation complied with the regulations.

---

[1] The ALJ's opinion omits the word "no" from this sentence. Reading the sentence how it originally appears, Ms. Kelly argues that the ALJ's assessment is internally inconsistent because the ALJ found the opinions assessing mild limitations persuasive but then stated the opinions are consistent with "significant mental limits or symptoms." (Doc. 15 at 10–11). However, reviewing the sentence in context, along with the ALJ's cites to the record for support of this sentence, the court is convinced that this was a typographical error and the ALJ intended to convey that the medical evidence does *not* support finding significant mental limits or symptoms.

The ALJ's finding that the opinions are consistent with the record evidence is also supported by substantial evidence. Ms. Kelly argues that the consultants' findings of minimal limitations are contradicted by her testimony, her cousin's testimony, her Wellbutrin prescription, and clinical notes indicating she had moderate depression. (Doc. 15 at 11–12; *see* r. at 510–11). But none of this evidence shows that she had more than mild limitations with the basic tasks outlined in the consultants' reports. (*See* r. at 111, 122); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard."). And the fact that the ALJ did not specifically reference this evidence in evaluating the consultants' reports also does not show that the ALJ's decision is unsupported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.") (quotation marks omitted; alteration accepted).

Accordingly, the ALJ's evaluation of the consultants' opinions was not erroneous as a matter of law, and substantial evidence supports the ALJ's finding that the opinions are persuasive.

2. The Omission of Mental Limitations from the RFC

Ms. Kelly argues that, despite the ALJ determining that she had mild mental limitations, the RFC inexplicably contains no evaluation of her mental limitations. (Doc. 15 at 14–18). The Commissioner responds that the ALJ thoroughly considered Ms. Kelly's mental impairments in the "special technique" discussion and that he did not err in declining to assess those limitations in the RFC because he accepted the consultants' opinions finding that Ms. Kelly experienced "[no] significant mental limits or symptoms." (Doc. 18 at 6–11). The court agrees with Ms. Kelly.

The ALJ considered Ms. Kelly's mental impairment at two steps of the analysis: during step two to determine whether Ms. Kelly's depression constitutes a severe impairment, and during step four to craft Ms. Kelly's RFC. (R. at 13–15, 21). Ms. Kelly does not contest the ALJ's determination at step two that her depression does not constitute a severe impairment. (*See* doc. 15 at 14–18). Instead, she challenges the ALJ's failure to address her non-severe mental impairment when crafting the RFC indicating she can perform highly skilled work. (*Id.*). The court briefly delineates the two analyses.

At step two, the ALJ must evaluate mental impairments using a "special technique" detailed in the regulations. 20 C.F.R. § 404.1520a(c)–(e); *Moore*, 405 F.3d at 1213–14. This technique requires the ALJ to evaluate on a five-point scale (none, mild, moderate, marked, and extreme) how the claimant's mental impairment

impacts four functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3)–(4). Limitations rated as "none" or "mild" generally indicate a non-severe impairment. *Id.* § 404.1520a(d)(1). The regulations define a non-severe impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). Basic work activities include the following: (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering simple instructions"; (4) "[u]se of judgment"; (5) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (6) "[d]ealing with changes in a routine work setting." *Id.* § 404.1522(b). To avoid remand, an ALJ must complete this special technique and incorporate the analysis into his findings and conclusions. *Moore*, 405 F.3d at 1213–14.

At step four, "the ALJ conducts a residual-functional-capacity assessment of the claimant, which is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (quotation marks omitted). An ALJ must consider both severe and non-severe impairments when crafting an RFC,

and the ALJ must "address the degree of impairment caused by the combination of physical and mental medical problems." *Id.* at 1268–69. The four functional areas in the technique used during the second step "are *not* a residual functional capacity assessment," and step four "requires a more detailed assessment" of the functions identified in the second step. *Id.* at 1269.

The Eleventh Circuit's decision in *Schink* controls the outcome of this case. *Id.* at 1268–70. There, after erroneously finding that the claimant's mental impairments were non-severe, the ALJ crafted the claimant's RFC without any consideration of the claimant's mental impairments. *Schink*, 935 F.3d at 1268–70. The court explained that the ALJ erred by failing to consider how the claimant's mental limitations may affect his ability to perform the duties of his work. *Id.* And the court made clear that an ALJ must consider all impairments when assessing an RFC—whether severe or non-severe. *Id.* at 1268–69. The court clarified that thoroughly considering the mental limitations only at step two of the analysis was insufficient, and that the ALJ must clearly explain how the findings at step two affect the RFC findings at step four to avoid reversal. *Id.* at 1269.

Here, in analyzing the severity of Ms. Kelly's depression at step two, the ALJ determined that Ms. Kelly experienced mild limitations interacting with others and concentrating, persisting, or maintaining pace. (R. at 13–14). But as the Commissioner concedes in his brief (doc. 18 at 10), the ALJ did not assess these

limitations at step four. (R. at 16–22). The closest the ALJ came to doing so was when he stated that he was persuaded by the consultants' opinions because they were consistent with "a diagnosis of major depressive disorder but [no] significant mental limitations." (*Id.* at 21). Apart from making this determination as to the persuasiveness of those opinions, however, the ALJ did not incorporate Ms. Kelly's mild mental limitations into the RFC assessment itself—instead, the ALJ focused solely on Ms. Kelly's physical limitations. (*Id.* at 16–22). So, like in *Schink*, the ALJ's decision "contains no real discussion of how the mental condition affected [Ms. Kelly's] RFC." 935 F.3d at 1269. As a result, the RFC findings do not "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted," which "mandates reversal in its own right." *Id.* (quotation marks omitted).

Nor is the court convinced that this error was harmless. *Id.* at 1268. The ALJ determined that Ms. Kelly had limitations with interacting with others and concentrating, persisting, or maintaining pace. (R. at 13–14). Work as a bookkeeper is classified as skilled work. (*Id.* at 22); *see* SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). Skilled work may "require dealing with people, facts, or figures or abstract ideas at a high level of complexity," or may "require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications,

or making necessary computations or mechanical adjustments to control or regulate the work." 20 C.F.R. § 404.1568(c). Without any discussion of how Ms. Kelly can continue to perform skilled work despite her mild limitations, the court cannot conclude that the ALJ's RFC assessment is supported by substantial evidence. *Schink*, 935 F.3d at 1269; *see also Winschel*, 631 F.3d at 1179 (observing that "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," a reversal is warranted because "it is impossible . . . to determine whether the ultimate decision . . . is rational and supported by substantial evidence") (quotation marks omitted).

The Commissioner argues that the ALJ's evaluation of Ms. Kelly's mental impairment at step two was sufficient to support his finding at step four. (Doc. 18 at 6–11). But as the Commissioner recognizes (*id.* at 7), the step four analysis requires a different and more detailed assessment than step two. *Schink*, 935 F.3d at 1269. And as the Eleventh Circuit explained, even if the ALJ considered Ms. Kelly's mental conditions *sub silentio* and implicitly found that they imposed no significant limitations on her RFC, a remand would still be required because "failure to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Id.* (alteration omitted).

3. Ms. Kelly's Migraines

Ms. Kelly argues that the ALJ improperly evaluated the medical evidence relating to her migraines, both when assessing whether Ms. Kelly's migraines equaled a listed impairment at step three and when crafting Ms. Kelly's RFC at step four. (Doc. 15 at 18–25). In response, the Commissioner argues that Ms. Kelly failed to demonstrate that her migraines satisfied the criteria of a listed impairment and that the ALJ adequately considered the evidence relating to Ms. Kelly's migraines in the RFC. (Doc. 18 at 12–14). Because the court construes the ALJ's discussion of Ms. Kelly's migraines at step four as bearing upon the analysis at step three, the court will first address the ALJ's RFC assessment and will then turn to the ALJ's finding that Ms. Kelly's migraines did not equal a listed impairment.

*a. Assessment of migraines in the RFC*

Ms. Kelly argues that the ALJ erred in crafting an RFC assessment that did not account for absenteeism or off-task time because he failed to account for evidence in the record demonstrating the impact of Ms. Kelly's migraines on her ability to work. (Doc. 15 at 22–25).

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An ALJ crafts an RFC

using a two-step process to evaluate an individual's symptoms. The first step requires an ALJ to assess "whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). After that, an ALJ proceeds to the second step in which he must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

Social Security Ruling 16-3p discusses the types of evidence an ALJ is required to consider at each step of this analysis. An ALJ must base its decision at step one solely upon "objective medical evidence from an acceptable medical source." *Id.* at *3. At step two, however, an ALJ "will not disregard an individual's statements" about the claimant's symptoms "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *5. Instead, an ALJ must "examine the entire case record" and "carefully consider other evidence," including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *4, 6.

Although "there is no rigid requirement that the ALJ specifically refer to every piece of evidence," an ALJ's credibility determination of an individual's testimony

"cannot merely be a broad rejection." *Dyer*, 395 at 1210. Accordingly, if an ALJ chooses to discredit a claimant's testimony, it must justify that decision with articulated reasons which show that the ALJ "considered [the claimant's] medical condition as a whole." *Id.* An ALJ's refusal to credit a claimant's testimony can only be sustained if the ALJ's articulated reasons are supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

Here, the ALJ concluded at step one that Ms. Kelly's migraines could reasonably be expected to produce Ms. Kelly's alleged symptoms. (R. at 19). But at step two, the ALJ determined that Mr. Kelly's statements concerning the intensity, persistence, and limiting effects of her migraines were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 20). The ALJ stated:

> [T]he relevant examination findings have remained entirely normal despite the claimant's allegations of frequent migraine headaches (Exhibits 1F, 2F, 3F, 5F, 7F, 8F, 9F, 11F, 13F, and 14F), and computerized CT and MRI scans of her brain have been unremarkable for any abnormality. Moreover, her cranial nerve function, eye movements, balance, gait, memory, cognition, and attention have all remained unaffected.

(*Id.*).

The ALJ's focus on Ms. Kelly's examination findings, computerized scans, and neurological functions hinges entirely on the absence of residual neurological deficiencies to conclude that Ms. Kelly's statements concerning her migraines were inconsistent with the record evidence. This is problematic for two reasons.

First, the ALJ's analysis fails to establish why the absence of residual neurological deficiencies should be considered as the conclusive determinant of whether Ms. Kelly's headaches are severe. In particular, an unremarkable MRI or CT scan does not establish any inconsistency with Ms. Kelly's statements concerning her migraines because those tests do not prove the non-existence of migraines, but are instead used to rule out alternative causes. *See* SSR 19-4p, 2019 WL 4169635, at *4 (S.S.A. Aug. 26, 2019) (explaining that "physicians may use [MRI] to rule out other possible causes of headaches . . . meaning that an unremarkable MRI is consistent with a primary headache diagnosis"). In addition, it is unclear how the ALJ's statement that "[Ms. Kelly's] cranial nerve function, eye movements, balance, gait, memory, cognition, and attention have all remained unaffected" relates to the intensity, persistence, and limiting effects of her migraine symptoms. *See Raduc v. Comm'r of Soc. Sec.*, 380 Fed. App'x 896, 898 (11th Cir. 2010) (finding unpersuasive an ALJ's statement regarding a negative examination result because "[i]t is unclear how this statement relates to the effect of [the claimant's impairment] on her RFC").[2] So the court is unconvinced that the absence of neurological deficiencies supports the inference that Ms. Kelly's migraines were any less severe than her statements reflect.

[2] Although *Raduc* is an unpublished opinion, the court finds it persuasive. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022).

Second, although the ALJ stated that Ms. Kelly's statements were not entirely consistent with both the "medical evidence" and "other evidence" in the record, the ALJ relied solely on objective medical evidence in support of this conclusion. (R. at 20). But the regulations do not require an ALJ to find objective evidence before crediting other evidence of a claimant's symptoms.

In the absence of objective evidence, the regulations require an ALJ to consider other evidence in determining whether to credit an individual's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); *see also* SSR 16-3p, 2017 WL 5180304, at *6 (S.S.A. Oct. 25, 2017) ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."). The court cannot determine what other evidence was considered here because the ALJ failed to identify the other evidence he considered, and the record reveals "other evidence" that supports Ms. Kelly's testimony regarding the intensity, persistence, and limiting effects of her migraines.

Ms. Kelly presented medical records with descriptions reflecting that she experiences severe pain, nausea, dizziness, and numbness when she has a headache (r. at 587, 642, 645); that she is only able to work one to three days per week because of her headaches (*id.* at 428); that she has been prescribed escalated pharmaceutical remedies, including Botox, in an attempt to control her symptoms (*id.* at 430, 645); and that multiple prescribed treatments have been ineffective (*id*. at 430). The ALJ's "broad rejection" of this other supportive evidence "is not enough to enable [the district court] to conclude that the ALJ considered [Ms. Kelly's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation marks omitted; alteration accepted). Because the court cannot conclude that the ALJ complied with his requirement to consider the other evidence, it must reverse. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("Where we cannot determine from the ALJ's opinion whether the ALJ applied the statutory requirements[,] . . . we cannot effectively perform our duty to ensure that the proper regulatory requirements were in fact applied.").

Relatedly, the ALJ's failure to consider absenteeism in Ms. Kelly's RFC resulted from his exclusive reliance upon the absence of residual neurological effects. (R. at 16–22). Accordingly, that failure also warrants a remand. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219–20 (11th Cir. 2001) (reversing an ALJ's RFC finding that relied on objective evidence because the assessment failed to

account for other evidence relating to the impact of the claimant's symptoms on her ability to work).

*b. Migraines equaling the severity of a listing*

Ms. Kelly argues that the ALJ's explanation for why her migraines did not equal a listed impairment is too conclusory to permit judicial review and fails to account for evidence establishing that her migraines equaled listing 11.02(B) for epilepsy. (Doc. 15 at 19–22).

At step three, the ALJ must determine whether a claimant's severe impairments equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 404.1520(a)(4)(iii). But if an impairment is not listed, the ALJ must compare a claimant's impairment to "closely analogous listed impairments." *Id.* § 404.1526(b)(2). If a claimant's impairments "are at least of equal medical significance to those of a listed impairment," then the claimant's impairment is analogous to the listing. *Id.*

The parties agree that migraines are not a listed impairment. (Doc. 15 at 18; doc. 18 at 11); *see generally* 20 C.F.R. pt. 404, subpt. P, app. 1. However, Social Security Ruling 19-4p provides guidance on how the Commissioner evaluates primary headache disorders in disability claims. SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). It states that a claimant may establish that their headache

disorder is medically equivalent to epilepsy—listing 11.02(B) or (D) in the appendix. *Id.*

Ms. Kelly argues that her headaches equal the severity and duration of epilepsy under listing 11.02(B). (Doc. 15 at 21). Epilepsy under listing 11.02(B) requires dyscognitive seizures occurring at least once a week for three consecutive months despite adherence to prescribed treatment. SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). In determining whether a claimant's headaches equal the severity and duration of 11.02(B) seizures, the ALJ considers:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

Here, the ALJ stated the following as the basis for why Ms. Kelly's migraines did not equal listing 11.02: "There is no listing for migraine headaches, and the medical evidence does not suggest that the frequency of the claimant's migraines would medically equal the criteria of listing 11.02." (R. at 15).

The court first addresses Ms. Kelly's argument that this statement is too conclusory to allow for judicial review. (Doc. 15 at 19–20). Contrary to Ms. Kelly's argument, this statement shows that the ALJ specifically considered listing 11.02 and concluded that Ms. Kelly's migraines did not equal the listing because they were not frequent enough. (R. at 15). So this is not a case in which there is insufficient information to conclude that the ALJ considered the listing at all. *See Wright v. Comm'r of Soc. Sec.*, No. 24-11084, 2026 WL 1481204, at *3 (11th Cir. May 27, 2026) (reversing an ALJ's finding that a claimant's migraines did not equal a listed impairment when the opinion failed to mention listing 11.02 entirely). Moreover, an ALJ is not required to explicitly state why a claimant's impairment does not equal a listed impairment so long as the opinion clearly shows that the ALJ considered the relevant law and evidence. *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("There may be an implied finding that a claimant does not meet a listing."). Accordingly, the ALJ's discussion of this issue is not too conclusory to permit judicial review.

But the ALJ's finding can only stand if it is supported by substantial evidence. Although the ALJ concluded that Ms. Kelly's migraines were not frequent enough to equal listing 11.02, the court has difficulty squaring this assessment with the evidence in the record. In particular, Ms. Kelly's testimony reflects that she has experienced migraines at least three times per week (r. at 90; *see also* doc. 15 at 24),

and her medical records show that her migraines have occurred between fifteen to twenty times per month for at least six consecutive months (r. at 401, 411). This level of frequency exceeds what is required under listing 11.02(B). *See* SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019) (stating that listing 11.02(B) requires "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment"). Yet the ALJ failed to address why Ms. Kelly's evidence was insufficient. (*See generally* r. at 10–22). Indeed, the Commissioner's brief does not attempt to defend this basis for the ALJ's decision, and instead makes an alternative argument that Ms. Kelly failed to establish that her migraines have altered her consciousness. (Doc. 18 at 12–13). But there is no evidence that the ALJ considered that argument (*see generally* r. at 10–22), and the mere existence of other grounds that could support the ALJ's conclusion does not provide a basis to affirm. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm ALJ's decision "simply because some rationale might have supported the ALJ's conclusion").

The analysis does not end there, however, because the court must still examine the entirety of the opinion to determine if the ALJ supported his conclusion elsewhere. *Raper*, 89 F.4th at 1275–76. Accordingly, the court considers the ALJ's analysis of the persistence of Ms. Kelly's migraines at step four as bearing upon the ALJ's analysis frequency at step three. But again, that analysis relies entirely on the

absence of residual neurological deficiencies as the basis for determining that Ms. Kelly's migraines were not persistent enough. (R. at 20). Because the absence of residual neurological deficiencies does not establish an inconsistency with statements relating to migraine symptoms, it does not establish that the statements in the record concerning the frequency of Ms. Kelly's migraines are incorrect. So the ALJ's discussion of the persistence of Ms. Kelly's migraines does not support his assessment of frequency either.

Accordingly, the ALJ's conclusion that Ms. Kelly's migraines were not frequent enough to equal listing 11.02(B) is not supported by substantial evidence. Because the ALJ did not offer any reason other than lack of frequency for concluding that Ms. Kelly's migraines did not equal the listing, the court cannot conclude this error was harmless. *See Mills v. Astrue*, 226 Fed. App'x 926, 931 (11th Cir. 2007) ("We cannot say the error was harmless without re-weighing the evidence. To do so would call for conjecture that invades the province of the ALJ."). Accordingly, a remand is appropriate.

## V. CONCLUSION

Because the court cannot find that the ALJ's denial of Ms. Kelly's application for disability benefits is supported by substantial evidence, the court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** this action for further administrative proceedings.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 30, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE